FILED'06 MAY 12 08:05USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WRIGHT H. BRUMFIELD,       )
                              )
           Plaintiff,    )   Civil No. 05-1950-JE
                              )
        v.             )   OPINION AND ORDER
                              )
PORTLAND COMMUNITY MEDIA,    )
                              )
          Defendant.    )

Wright H. Brumfield
1024 S.W. Main Street, #352
Portland, OR 97205
    Plaintiff Pro Se

William T. Patton
Lane Powell, PC
601 S.W. Second Avenue, Suite 2100
Portland, OR 97204-3158
    Attorney for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Wright H. Brumfield brings this action against defendant Portland Community Media (PCM) alleging a violation of his procedural due process rights protected under the Fourteenth Amendment to the United States Constitution.

Defendant PCM moves for summary judgment on plaintiff's claim.[1]  The motion is granted.

### Factual Background

Defendant PCM is a private non-profit organization that provides public access programming on various television channels in the Portland area.  Defendant provides public access programming pursuant to a cable access agreement with the City of Portland, which is administered by the Mt. Hood Cable Regulatory Commission (MHCRC).  Defendant receives funding under this agreement to provide various services to the public, including transmission of public access programming on cable channels, and housing a site for public access television production.

Under the agreement, the defendant is also required to provide instruction in television programming and media literacy by offering a variety of affordable television production classes.  One such class covers a complex digital editing computer program entitled "Final Cut Pro."

---

[1]Before defendant filed the pending motion for summary judgment, plaintiff filed a motion to strike one of defendant PCM's affirmative defenses.  It was not separately addressed because the same issues are dealt with in this motion for summary judgment.

Defendant offered a Final Cut Pro class in the winter of 2005. According to the 2005 winter class schedule, the Final Cut Pro class "assumes that a student has a working knowledge of basic computer skills." This class consisted of four consecutive weekly sessions for a total cost of $35.00.

Plaintiff enrolled in a Final Cut Pro class taught by Tim Rooney, one of defendant's instructors, in the winter 2005 session. The first class session was held on January 24, 2005. According to a declaration Rooney submitted in support of the pending motion, Rooney concluded that plaintiff did not have the requisite computer skills needed for the Final Cut Pro class to be beneficial. Rooney stated that he attempted to work with plaintiff while teaching the course, but did not discuss with plaintiff his concern about plaintiff's apparent lack of basic computer skills.

Plaintiff attended the second class session on January 31, 2005, but did not attend the third or fourth sessions of the course. Plaintiff asserts that he did not complete the course because he felt that, during a classroom break, Rooney cut off his conversation with plaintiff when a Caucasian woman requested Rooney's assistance, and because he thought Rooney was a racist.

Defendant offered another four week session of the Final Cut Pro class, beginning on February 28, 2005. Plaintiff attended the first session on that date, but did not attend the last three sessions.

3 - OPINION AND ORDER

Plaintiff was not expelled or asked to leave any of the Final Cut Pro class sessions he attended.

In early March, 2005, defendant's Access and Program Director, Victor Hoornstra, showed Rooney a letter plaintiff had sent to defendant which stated that Rooney and defendant had "some racial problems."  In this letter, plaintiff stated that he would take another Final Cut Pro class, but would not take another class taught by Rooney.  According to Rooney's declaration, this letter was the first time Rooney was aware of plaintiff's accusation of racism.

Rooney and Hoornstra discussed plaintiff's situation, and agreed that plaintiff would not benefit from taking another Final Cut Pro class until he had acquired more fundamental computer skills.  Hoornstra sent a letter to plaintiff dated March 10, 2005, suggesting that he take a basic computer course at Portland Community College before re-enrolling in a Final Cut Pro class.  The letter also stated that, regardless of who taught the class, any other Final Cut Pro class would be an "equally difficult experience" for plaintiff given his computer skills.  Enclosed in this letter was a check for $35.00 as a refund for plaintiff's Final Cut Pro enrollment fee.

Plaintiff sent defendant a letter dated March 12, 2005, and enclosed documents indicating that he had completed two self-taught computer classes at Portland Community College in 2003.  Defendant did not respond to this letter.

4 - OPINION AND ORDER

Plaintiff sent a letter dated April 12, 2005, to defendant's Board of Directors stating that he had been wrongfully expelled because he "complained about ill treatment" to Hoornstra.  In a letter dated April 14, 2005, defendant advised plaintiff that it had received his letter and that he would hear from the committee in a week about the procedure for addressing his concerns.

The president of defendant's Board of Directors, Kohel Haver, sent plaintiff a letter dated April 20, 2005, advising plaintiff that a special meeting of the PCM Executive Committee would be held on May 10, 2005, to address plaintiff's concerns, and requesting his presence at the meeting.

In a letter dated May 2, 2005, plaintiff notified Haver that he would not attend the special session.

The Executive Committee held a special session on May 10, 2005, as scheduled.  During that meeting the Committee considered the complaints plaintiff had stated in his letters to defendant.  The Committee determined that Hoofstra's letter had been the appropriate response, and no further action was taken at that time.

On October 12, 2005, plaintiff telephoned defendant and asked Rosalinda Rowe, defendant's community relations specialist, when another session of the Final Cut Pro class would be offered.  According to Rowe's affidavit submitted in support of defendant's motion for summary judgment, plaintiff

became agitated and told her that defendant was a "racist institution" and that she was a "racist mothafucker." Plaintiff denies these assertions. According to defendant's incident report, plaintiff called defendant two more times that day, and repeated his allegations of racism to Neal Ruckman and Ben Dreusser, two of defendant's other staff members. Plaintiff subsequently sent a letter to defendant declaring his intention to sue defendant, which he did shortly thereafter.

<u>Plaintiff's Claim</u>

Plaintiff alleges that defendant violated his procedural due process rights protected by the United States Constitution by suggesting that he enroll in a basic computer course through the community college. He further alleges that, by contracting with MHCRC, defendant became a governmental entity that was constitutionally bound to afford him procedural due process rights. Plaintiff seeks an injunction requiring defendant to reinstate him into a Final Cut Pro class. He also seeks recovery of economic damages.

<u>Standards for Evaluating Motions for Summary Judgment</u>

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of

material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325
(1986).  The moving party may discharge this burden by showing
that there is an absence of evidence to support the nonmoving
party's case.  <u>Id.</u>  When the moving party shows the absence of
an issue of material fact, the nonmoving party must go beyond
the pleadings and show that there is a genuine issue for
trial.  <u>Id.</u> at 324.

The substantive law governing a claim or defense
determines whether a fact is material.  <u>T.W. Elect. Serv.,
Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630
(9th Cir. 1987).  Reasonable doubts concerning the existence
of a factual issue should be resolved against the moving
party.  <u>Id.</u> at 630-31.  The evidence of the nonmoving party is
to be believed, and all justifiable inferences are to be drawn
in the nonmoving party's favor.  <u>Anderson v. Liberty Lobby,
Inc.</u>, 477 U.S. 242, 255 (1985).  No genuine issue for trial
exists, however, where the record as a whole could not lead
the trier of fact to find for the nonmoving party.  <u>Matsushita
Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587
(1986).

<u>Discussion</u>

As noted above, plaintiff alleges a violation of his
constitutionally protected due process rights.  The plaintiff
has not alleged that his claim is brought pursuant to 42
U.S.C. §1983, and now contends that his claim does not arise
under §1983.  However, this court has jurisdiction only if a

7 - OPINION AND ORDER

complaint alleges violation of a federal law or diversity of citizenship.

From the record, it appears that both parties are residents of Oregon, and that this court accordingly lacks diversity jurisdiction.  Therefore, if, as plaintiff contends, his claim does not arise under §1983, this court lacks jurisdiction.

Despite his assertion that his claim does not arise under §1983, plaintiff's allegations of deprivation of rights protected under the Constitution are actionable only through that statute.  See, e.g., Robins v. Harum, 773 F.2d 1004, 1006 (9th Cir. 1985).  Accordingly, rather than dismiss this action for lack of jurisdiction, I will analyze plaintiff's claim as a §1983 claim.

Section 1983 provides, in pertinent part, that "[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privilege or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity . . . ."  In order to prevail on a claim brought pursuant to §1983, a plaintiff must establish that action taken under color of state law has deprived him of rights secured under the Constitution or laws of the United States.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).

Defendant contends that it is entitled to summary
judgment because the record includes no evidence that it
operates under color of state law.  I agree.

It is undisputed that defendant is a private, non-profit
organization, and is not an agency, department, or bureau of
the City of Portland.  The best evidence in the record of the
capacity in which defendant was acting at the times relevant
to this action is found in the "Agreement for Services," which
sets out defendant's obligations to and relationship with the
City.  That agreement clearly identifies defendant as a
contractor, and includes several provisions which indicate
that defendant does not operate under color of state law.  The
contract states that defendant must comply with state and
federal laws to maintain its non-profit tax status.  Agreement
for Services (hereinafter "Agreement") ¶14.14.  This supports
the conclusion that defendant is not an entity of the state,
because state entities are generally exempt from taxation.
That defendant is required under the contract to carry and
maintain its own workers compensation insurance indicates that
it does not have the coverage under the City's own policy that
would be expected to extend to a City entity.  See Agreement
¶14.4.  Likewise, the agreement requires defendant to maintain
its own liability coverage, which is inconsistent with the
conclusion that defendant was a city entity.  See Agreement
¶16.2.  The agreement also requires defendant to indemnify the
City for any liability the City might incur because of

9 - OPINION AND ORDER

defendant's conduct, a provision that would not apply if
defendant were a governmental entity.  See Agreement ¶16.1.
Further, the contract specifically states that the City "shall
not be liable for any obligations incurred by [defendant
PCM]," and provides that defendant "shall not represent to any
person that the City . . . is liable for [defendant PCM's]
obligations."  Agreement ¶14.7.  This provision supports the
conclusion that defendant is an entity separate from the City.

    Defendant correctly notes that in unusual circumstances,
the acts of private parties are considered as acts taken under
color of state law.  E.g., George v. Pacific-CSC Work
Furlough, 91 F.3d 1227, 1230 (9th Cir. 1996), cert. denied, 519
U.S. 1081 (1997).  In order for a private party's actions to
qualify as acts taken "under color of state law," there must
be significant state involvement in a private party's conduct.
Howerton v. Gabica 708 F.2d 380, 382 (9th Cir. 1983).  Federal
courts apply several tests in analyzing whether the conduct of
private parties should be construed as state action.  These
include "joint action," "public function," "state
compunction," and "close nexus" tests.  George, 91 F.3d at
1230.

    A private party who willfully participates in joint
action with state officials may be considered to have acted
under color of state law within the meaning of §1983.  Dennis
v. Sparks, 449 U.S. 24, 27 (1980).  Private parties may be
liable under this prong of "state action" analysis only if

their actions are "inextricably intertwined with those of the government." Mathis v. Pacific Gas and Elec. Co., 75 F.3d, 498, 503 (9th Cir. 1989).

A private actor who performs a function that has traditionally been "the exclusive prerogative of the State" may be regarded as a state actor within the meaning of §1983. Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982). Merely performing a function which serves the public does not make a private party's acts the acts of the state. Id.

Courts applying the "state compulsion" test examine whether the private actor in question violated constitutionally-protected rights under the "'compulsion' or framework" of state law or custom that has the force of law. Gorenc v. Salt River Agric. Improvement and Power Dist., 869 F.2d 503, 508 (9th Cir. 1989). Courts consider whether the private party was compelled to act "by statutory provision or custom having the force of law." See id.

When a sufficiently close "nexus" exists between the State and the actions of a private entity, the actions of the private entity may be construed as state action. Gorenc, 869 F.2d at 506. Such a nexus may exist if a public entity derives such profit from the activities of a private entity that a "symbiotic relationship" exists between the two. See Burton v. Wilmington Parking Auth., 365 U.S. 715 (1961).

The record before the court would not support the conclusion that defendant qualifies as a state actor under any

11 - OPINION AND ORDER

of these tests.  The evidence does not support a finding that
defendant's conduct is "fairly attributable" to the City of
Portland under any of these exceptions, but instead supports
only the conclusion that defendant acted only as a non-
governmental, private party.  The evidence does not show that
the actions of defendant and the City of Portland were
"inextricably intertwined".  Rather, separate rights and
responsibilities are clearly delineated in the agreement.  The
fact that MHCRC administers the contract does not convert
defendant's conduct into action by the City; private entities
are typically supervised by governmental agencies when
performing under publicly-funded contracts.  Without much
more, such supervision does not make a private entity's
contract "state" action.  Facilitating defendant's business
plan by providing funding does not rise to the level of joint
action between the private party and the government, and
broadcasting television programs and offering television
production classes have not traditionally been exclusive
functions of the State.  Further, no evidence in the record
indicates that the City of Portland compelled defendant to
take any action towards plaintiff, and the record does not
include evidence from which a finder of fact could conclude
that a sufficiently close nexus exists between the City of
Portland and defendant that defendant's conduct could be
characterized as "state" action.

12 - OPINION AND ORDER

Even if there was evidence in the record supporting the conclusion that defendant acted under the color of state law, I would grant the motion for summary judgment on other grounds. Due process rights can only be violated if one has a constitutionally-protected liberty or property interest that allegedly has been denied. See, e.g., Board of Regents v. Roth, 408 U.S. 564, 577 (1972) (person claiming property interest must have "legitimate claim of entitlement" to the benefit, rather than mere "unilateral expectation of it"). Here, plaintiff apparently asserts that he had a constitutionally protected educational interest in attending defendant's Final Cut Pro class. However, plaintiff has cited, and I have found, no reported decisions stating or implying that individuals have a constitutional property interest in that type of education.

A public education is not a substantive fundamental right generally protected under the Fourteenth Amendment. See San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 35 (1973)(education not among the rights afforded explicit protection under Federal Constitution). However, a property interest may arise from rights created by state statutes or by contracts with public entities. Galdikas v. Fagan, 342 F.3d 684, 692 (7th Cir. 2003), cert. denied, 540 U.S. 1183 (2004), abrogated on other grounds, Spiela v. Hull, 371 F.3d 928 (7th Cir. 2004). Therefore, to the extent that states establish public primary and secondary educational

13 - OPINION AND ORDER

systems, a property interest in that education is created
which is subject to constitutional protection.  See Goss v.
Lopez, 419 U.S. 565 (1975) (state law that entitled eligible
students to attend secondary school created a property
interest in secondary education).

Here, the record would support only the conclusion that
defendant does not provide the kind of education to which a
protectable property interest attaches.  Defendant is not a
public school that is required by state law to provide the
kind of primary or secondary education to which all are
equally entitled.  Instead, as discussed above, defendant is a
private, non-profit organization that offers low-cost classes
for people who wish to become familiar with basic television
production.  Neither the record before the court nor any
decisions that the parties have cited or I have found support
the conclusion that the state of Oregon has created a
protected property interest in the kind of education that
defendant offers.  See, e.g., Cady v. South Suburban College,
310 F.Supp. 2d 997, 999 (N.D. Ill. 2004) (expelled student
failed to state procedural due process claim against college,
because there was no property right in post-secondary
education under state common law, and student did not identify
statute or contract that created property right in that
education).

Furthermore, even if plaintiff could establish that he
had a constitutionally protected property interest in the
14 - OPINION AND ORDER

Final Cut Pro class, the record does not include evidence supporting the conclusion that defendant deprived him of such an interest. Rather, the record supports only the conclusion that plaintiff voluntarily left the class on two separate occasions and chose not to complete the course. Defendant's letter to plaintiff dated March 10, 2005, does not state that plaintiff was "expelled" from the Final Cut Pro class, or that he would not be allowed to attend that class in the future. When plaintiff brought his complaints to the attention of defendant's Board, the Board scheduled a meeting for plaintiff to discuss his allegations of racism, which plaintiff chose not to attend. Finally, defendant refunded plaintiff's class fee, and encouraged him to re-enroll in the Final Cut Pro class after taking a more basic computer course.

To briefly summarize, the record before the court supports only the conclusion that defendant was not acting under color of state law when the events giving rise to this action occurred, that plaintiff did not have a constitutionally protected interest in the Final Cut Pro class, and that, even if such right existed, plaintiff was not deprived of that right without due process. Accordingly, defendant is entitled to summary judgment.

Conclusion

Defendant's motion for summary judgment (#6) is GRANTED.

DATED this __11__ day May, 2006.

_____
John Jelderks
U.S. Magistrate Judge

16 - OPINION AND ORDER